IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BERNARD BREDAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 05 C 4707 |
| | ) | |
| HOLLAND LADDER & MANUFACTURING | ) | |
| COMPANY, a corporation, GREEN BULL, | ) | |
| INC., a corporation, and BROCK TOOL | ) | |
| COMPANY, a corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants contend that Harold W. Stillman, plaintiff's expert, does not base his opinion on any facts or data, that his conclusions are, essentially, solely his *ipse dixet* and, therefore, should not survive this court's gate-keeping function mandated by <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993). They move to bar his testimony. That motion is denied.

Stillman is a structural engineer, not a scientist. His opinions, therefore, should be viewed through the prism of <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137 (1999), which is an amplification of <u>Daubert</u>. It recognizes that experts "of all kinds tie observations to conclusions through the use of what Judge Leonard Hand called 'general truths derived from ... specialized experience.'" <u>Kumho</u> at 148. There appears to be little doubt about Stillman's qualifications. He was employed for many years at Sears, where he tested a lot of wooden ladders. He was chairman of an ANSI standards committee in 1977, where he advanced a number of proposed changes for the wooden ladder standard. He has investigated "hundreds

and hundreds" of cases with the Consumer Product Safety Commission. He has, since leaving

Sears (he was 78 at the time of his deposition), acted as an expert in numerous ladder accident

cases. In total, he estimated that the number of stepladder accidents he has investigated are

in the thousands.

His conclusion is that the ladder design is unreasonably dangerous. Its steps had a 3/4

inch protrusion in front. The step that broke had a nail holding the step in place in the side

rail groove that was 3/8 inch from the edge of the rail and imbedded in the step just below the

step's upper surface. Stillman testified that the splitting off of frontal protrusions has been

a continuing problem. He recommended in 1977 a formula that would have limited the

protrusion of the steps of this ladder to 3/8 inch. That was not adopted, although a 3/4 inch

maximum was adopted in 1994. Nail locations of no closer to the edge of the rails than 1/2 inch

was also recommended, and a 3/8 inch limitation was adopted in 1994.

According to Stillman, wood is a non-uniform material that deteriorates over time.

Thus, a structure that is reasonably safe when produced can become unsafe over time. A

frontal protrusion on a step is subject to cantilever bending (what this court might call torque

pressure) when weight is placed upon the protrusion. That protrusion is even more vulnerable

when a nail has been driven from close to the edge of the rail into the step just below the

surface, as the step is then more likely to split along the nail fault line.

Stillman had to concede that the ladder complies with ANSI A14.1 (2000). But (to

again invoke Judge Learned Hand), what is accepted as appropriate in an industry is not

necessarily due care. T. J. Hooper v. Northern Barge Corp., 60 F.2d 737 (2d Cir. 1932). He

cannot quantify the increased risk from a 3/4 inch protrusion over a 3/8 inch protrusion,

although, as defendants have noted, it is common sense that a longer front projection of the

step has a higher chance of breaking compared to a shorter projection. In his judgment,

however, based on a lifetime of observations and experience, the difference in risk is enough

that one is unreasonably dangerous and the other is not. That is a judgment he may make.

JAMES B. MORAN
Senior Judge, U. S. District Court

July 16 , 2007.